UNITED STATES of AMERICA
EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

MICHAEL MALEY,

    Plaintiff,                              DEMAND FOR JURY TRIAL

-vs-                                             Case No.
                                                   Hon.

SPECIALIZED LOAN SERVICING LLC, and
E*TRADE BANK,

    Defendants.

## COMPLAINT & JURY DEMAND

### Jurisdiction

1. This action is brought under the Federal Real Estate Settlement Procedures Act ("R.E.S.P.A."), 12 U.S.C. §2605, and this court has jurisdiction pursuant to and 28 U.S.C. §§ 1331, 1337; this court, as such, may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims under 28 U.S.C. § 1367.

2. This court has federal question jurisdiction under the Fair Debt Collection Practices Act, 15 U.S.C. §1692k(d) and 28 U.S.C. §§1331, 1337.

3. This Court has jurisdiction under 15 U.S.C. §1691e and 28 U.S.C. §§1331, 1332(d), and 1337.

4. This Court may take supplemental jurisdiction over the state law claims set forth in this pleading.

## Parties

5. The Plaintiff to this lawsuit resides in Rochester Hills, Michigan in Oakland County.

6. The Defendant, SPECIALIZED LOAN SERVICING LLC, is a non-Michigan corporation doing business in Michigan, incorporated outside the state of Michigan and with its principal place of business outside the State of Michigan.

7. The Defendant, E*TRADE BANK, is a non-Michigan entity doing business in Michigan, headquartered outside the state of Michigan and with its principal place of business outside the State of Michigan.

8. At all times relevant, SPECIALIZED LOAN SERVICING LLC is the agent for the Defendant, E*TRADE BANK and at all times E*TRADE BANK is liable for all of the acts and omissions of SPECIALIZED LOAN SERVICING LLC.

## Venue

9. The transactions and occurrences which give rise to this action occurred in Oakland County and in the City of Rochester Hills.

10. Venue is proper in the United States District Court for the Eastern District of Michigan.

## General Allegations

11. On or about August 5, 2004, Plaintiff entered into a second mortgage and note with Quicken Loans for $100,000 and allowed a subordinate lien to be placed on his principal dwelling ("the mortgage").

12. Quicken Loans sold the mortgage and note to E*TRADE BANK.

13. In late 2014, Plaintiff experienced a financial shortfall and was unable to make the monthly payments to E*TRADE BANK on the mortgage, which were approximately $400.00.

14. After the mortgage was in default, E*TRADE BANK hired SPECIALIZED LOAN SERVICING LLC to collect on the mortgage.

15. At all times relevant, SPECIALIZED LOAN SERVICING LLC is a debt collector as that term is defined in the Fair Debt Collection Practices Act.

16. On or about February 19, 2015, Defendants modified the terms of the mortgage in writing; specifically, on that date the unpaid principal balance was $103,620.00 and interest rate was 0%. The monthly payment was $1.00.

17. In the statement sent to Plaintiff on or about February 19, 2015, Plaintiff owed I owed $6.00, $1.00 for the 6 months starting in September of 2014.

18. Plaintiff did not make the payment timely.

19. On or about March 5, 2015, Defendants sent the Plaintiff a statement which stated that he owed a payment of $7.00 which he paid.

20. On or about April 2, 2015, Defendants sent the Plaintiff a statement which stated that he owed a payment of $2.00 which he paid.

21. On or about May 4, 2015, Defendants sent the Plaintiff a statement which stated that he owed a payment of $3.00 which he paid.

22. Plaintiff continued to receive statements from Defendants each month until April 18, 2016 with the monthly payment going up by $1.00 each month.

23. Plaintiff contacted Defendants and was unable to get an explanation for what was going on with his payments.

24. The last statement Plaintiff received from Defendants was dated April 18, 2016 and stated that the unpaid principal balance was $103,479.58.

25. On May 31, 2016, according to Defendants' records, the unpaid principal balance on the mortgage was $103,449.58.

26. Plaintiff contacted Defendants and was unable to get an explanation for why Defendants stopped sending him monthly statements.

27. In October of 2016, Plaintiff contacted Defendants to work out a settlement on the mortgage; Defendants explained that if Plaintiff agreed to a fixed monthly payment of $200.00, then Defendants would keep the interest rate at 0.00%.

28. Defendants agreed to a structured settlement of the mortgage whereby the Plaintiff would pay $200.00 per month at 0.00% interest; Defendnats stated that they would send the paperwork for Plaintiff to sign.

29. Defendants resumed monthly statements on or about December 8, 2016, unilaterally raising his interest rate to 5.25% and stating that he owed a past due balance of $9,823.44.

30. On or about December 13, 2016, the Defendants sent the Plaintiff a written structured settlement letter ("12-13-16 letter") stating falsely that the unpaid principal balance on the mortgage was $112,974.87.

31. Plaintiff did not agree to the false statement of the inflated unpaid principal balance of $112,974.87 and did not agree to the structured settlement under those terms.

32. On or about April 21, 2017, Plaintiff contacted the Defendants in writing disputing the Defendants' false representation that the unpaid principal balance was $112,974.87.

33. On or about May 5, 2017, the Defendants responded to Plaintiff's dispute with the false assertion that the unpaid principal balance which went from $103,449.58 on March 31, 2016 to $112,974.87 on December 12, 2016 had accrued $9,525.29 in interest and administrative fees.

34. On or about May 16, 2017, Plaintiff asked in writing that the Defendants provide him an explanation of the $9,525.29 upcharge and provide documentation to support these charges, specifically statements from the Defendants for the months of May through November of 2016 – which Plaintiff never received – which would presumably show where the $9,525.29 in billings came from.

35. On or about May 25, 2017, the Defendants responded in writing to the Plaintiff's May 16, 2017 letter and represented:

    a. That due to a "system error" it had no statements for the months of May through November of 2016;

    b.    That the unpaid principal balance on that date was $103,449.58; and

    c.    That the previous billing statements Defendants sent to the Plaintiff were not in error.

36. Plaintiff continued to send the Defendants correspondence seeking an explanation as to how the mortgage had accrued almost $10,000.00 in charges between May of 2016 and December of 2016; at no point were the Defendants able to explain this to the Plaintiff.

37. At some point prior to August 18, 2017, Defendants claimed that an error with his mortgage caused the accrual of the upcharge between May of 2016 and December of 2016.

38. On or about August 18, 2017, Plaintiff sent a written request to the Defendants seeking an explanation of what the error was which caused his loan to accrue almost $10,000.00 in charges between May of 2016 and December of 2016.

39. Defendants did not respond to the August 18, 2017 letter.

40. On or about October 6, 2017, the Plaintiff again sent a written dispute to the Defendants requesting that Defendants explain how his loan accrued almost $10,000.00 in charges between May of 2016 and December of 2016; this letter was a qualified written request as that term is defined in 12 U.S.C. §2605 *et seq*.

41. On or about November 1, 2017, the Defendants responded in writing to the Plaintiff's October 6, 2017 qualified written request, but specifically did not address why his loan accrued almost $10,000.00 in charges between May of 2016 and December of 2016.

42. On or about November 13, 2017, Plaintiff sent a written request to the Defendants again seeking an explanation of what caused his loan to accrue almost $10,000.00 in charges between May of 2016 and December of 2016; this letter was a qualified written request as that term is defined in 12 U.S.C. §2605 *et seq*. Defendants received this qualified written request on November 17, 2017.

43. On or about March 15, 2018, 118 business days later, the Defendants responded in writing to the Plaintiff's November 13, 2017 qualified written request, but specifically did not address why his loan accrued almost $10,000.00 in charges between May of 2016 and December of 2016, but falsely represented that "pursuant to the settlement" the unpaid principle balance would have increased to $112,974.87; no such settlement was ever agreed to by the Plaintiff. Defendants did not explain where that amount came from other than to state that Defendants capitalize the past due balance. However, this explanation did not comport with the invoices which the

Defendants sent to Plaintiff through April of 2016 showing that his interest rate was 0.00%.

44. Prior to April 28, 2018, Plaintiff received a telephone call from the Defendants asking if he wished to settle the mortgage; Plaintiff asked the Defendants' representative how his loan could have accrued almost $10,000.00 in charges between May of 2016 and December of 2016; Plaintiff was then told verbally that the 0.00% must have changed at some point.

45. On or about April 28, 2018, Plaintiff sent another written request to the Defendants again seeking an explanation of when and why, contrary to all of the documentation he had received from the Defendants his interest rate had changed from 0.00%; this letter was a qualified written request as that term is defined in 12 U.S.C. §2605 *et seq.* Defendants received this qualified written request on November 17, 2017.

46. On or about May 18, 2018, the Defendants responded in writing to the Plaintiff's April 18, 2018 qualified written request, stating that they set his interest rate at 0.00% in February of 2015 but then changed the interest rate to a higher rate on December 8, 2016 and retroactively and illegally added interest to his mortgage. Defendants did not explain how that amount was calculated and went on to state that the interest rate described in the Plaintiff's

most recent qualified written request was not in error.

47. Had Plaintiff known that he was paying interest since February of 2016 instead of 0.00% as represented by the Defendants or if he had known that interest would be retroactively added to his loan, he would have paid higher payments per month at 0.00% and his balance today would be approximately $95,000.00 instead of the approximately $122,500.00 which Defendants now say he owes.

48. Despite its receipt of the qualified written requests listed herein, Defendant SPECIALIZED LOAN SERVICING LLC refused to lawfully and properly respond to these qualified written requests.

49. SPECIALIZED LOAN SERVICING LLC failed to conduct the necessary investigation into the disputes tendered by Plaintiff in violation of RESPA, and, as such, SPECIALIZED LOAN SERVICING LLC continued with its collection against Plaintiff and subjected Plaintiff to additional illegal charges and fees which the Plaintiff would otherwise not have had to pay.

### COUNT I – R.E.S.P.A. 12 U.S.C. § 2601 *et seq*.
### (SPECIALIZED LOAN SERVICING LLC)

50. Plaintiff incorporates the preceding allegations by reference.

51. R.E.S.P.A. applies to federally regulated mortgage loans, which include subordinate liens and loans used to payoff an existing loan secured by the

same property;

52. The transactions described herein involve a federally regulated mortgage loan.

53. SPECIALIZED LOAN SERVICING LLC willfully violated the R.E.S.P.A. in one or more of the following ways, by example only and without limitation:

   a. By failing to make appropriate corrections in the account of the Plaintiff and failing to transmit written notification of such correction to the Plaintiff(12 U.S.C. §2605(e)(2)(A));

   b. By failing to provide the Plaintiff with a written explanation or clarification that includes a statement of the reasons that SPECIALIZED LOAN SERVICING LLC believed the account of the Plaintiff to be correct and the name and telephone number of an individual employed by Defendant who could provide assistance to the Plaintiff(12 U.S.C. §2605(e)(2)(B));

   c. By failing to provide the Plaintiff with a written explanation or clarification that included the information requested by the Plaintiff or an explanation of why the information requested was unavailable or could not be obtained by SPECIALIZED LOAN SERVICING LLC and the name and telephone number of an individual who could provide

assistance to the Plaintiff (12 U.S.C. §2605(e)(2)[c]; and

d. By providing, upon information and belief, information regarding any overdue payment owed by the Plaintiff and relating to the period described in the qualified written request to a consumer reporting agency during the 60 day period which began on the date of SPECIALIZED LOAN SERVICING LLC's receipt of the qualified written request (12 U.S.C. § 2605(e)(3).

54. As a result of these violations, the Plaintiff suffered damages of an economic and non-economic nature.

## **COUNT II – BREACH OF CONTRACT**
## **(DEFENDANTS)**

55. Plaintiff incorporates the preceding allegations by reference.

56. Defendants and the Plaintiff had an agreement evidenced in writing whereby the Plaintiff would pay the amounts set forth in the invoices sent to the Plaintiff.

57. Defendants breached that agreement by retroactively adding charges and interest to the Plaintiff's loan account.

58. Plaintiff suffered actual damages and is threatened with additional harm from Defendant's breach.

## COUNT III – FRAUD/MISREPRESENTATION

## (SPECIALIZED LOAN SERVICING LLC)

59. Plaintiff incorporates the preceding allegations by reference.

60. At all times relevant hereto, Defendants represented to Plaintiff that:

    a. His interest rate was 0.00% from February of 2016 through December of 2016;

    b. His unpaid principal balance was $103,449.58.

61. The foregoing representations were false.

62. Defendants made the aforesaid representations knowing the same to be false, or with reckless disregard as to whether they were true or false.

63. Plaintiff relied on these misrepresentations and suffered damages as a result of such reliance.

64. Defendants benefitted from the detrimental reliance of the Plaintiff upon Defendant's misrepresentations.

65. As a direct and proximate result of Defendants' fraud and/or misrepresentation, Plaintiff has suffered the damages set forth above, as well as mental distress, anxiety, humiliation and embarrassment.

## COUNT IV – UNJUST ENRICHMENT

## (Defendants)

66. Plaintiff incorporates the preceding allegations by reference.

67. The actions of Defendants were intentionally designed to make interest and other costs accrue.

68. Defendants knew or should have known that the monthly statements Defendants sent to Plaintiff were not accurate and if Plaintiff made the payments set forth in those statements that the Defendants would accrue additional costs and fees to which they were not justly entitled.

69. The monthly statements Defendants sent to Plaintiff were not accurate and Plaintiff did make the payments set forth in those statements and the Defendants did accrue additional costs and fees to which they were not justly entitled.

70. Defendants were unjustly enriched as set forth herein and Plaintiff suffered damages as a result.

## COUNT V – MISREPRESENTATION

### (Defendants)

71. Plaintiff incorporates the preceding allegations by reference.

72. Defendants made false representations of material facts as set forth herein.

73. As a result, Plaintiff has suffered significant financial losses as a direct and proximate result of Defendants' misrepresentations.

## COUNT VI – VIOLATION OF M.C.L § 445.901 *et seq*.

### (Defendants)

74. Plaintiff incorporates the preceding allegations by reference.

75. The facts set forth in this complaint establish that Defendants violated one or more of the provisions of the Michigan Consumer Protection Act, M.C.L.§ 445.903(1).

76. Plaintiff has suffered damages as a result of these violations of the Michigan Consumer Protection Act.

## COUNT VII – Fair Debt Collection Practices Act

### (SPECIALIZED LOAN SERVICING LLC)

77. Plaintiff incorporates the preceding allegations by reference.

78. At all relevant times SPECIALIZED LOAN SERVICING LLC – in the ordinary course of its business – regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

79. SPECIALIZED LOAN SERVICING LLC is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

80. SPECIALIZED LOAN SERVICING LLC's foregoing acts in attempting to collect this alleged debt against Plaintiff constitute violations of the FDCPA.

81. Plaintiff has suffered damages as a result of these violations of the FDCPA.

## COUNT VIII – Michigan Occupational Code

## (SPECIALIZED LOAN SERVICING LLC)

82. Plaintiff incorporates the preceding allegations by reference.

83. SPECIALIZED LOAN SERVICING LLC is a "collection agency" as that term is defined in the Michigan Occupational Code ("MOC"), M.C.L. § 339.901(b).

84. SPECIALIZED LOAN SERVICING LLC's foregoing acts in attempting to collect this alleged debt against Plaintiff constitute violations of the Occupational Code.

85. Plaintiff has suffered damages as a result of these violations of the Michigan Occupational Code.

## Demand for Jury Trial

86. Plaintiff demands trial by jury in this action.

## Demand For Judgment for Relief

*ACCORDINGLY, Plaintiff requests that this Court:*

*a.   Grant Plaintiff all legal title to the subject property;*

*b.   Award Plaintiff all damages incurred by Plaintiff as a result of SPECIALIZED LOAN SERVICING LLC's actions herein;*

*c.   Award Plaintiff costs and attorney's fees;*

*d.   Award any other relief that this Court deems just and equitable;*

 *e.* *Award exemplary damages;*

 *f.* *Award costs and attorney fees.*

       Respectfully Submitted,

       ADAM G. TAUB & ASSOCIATES
       CONSUMER LAW GROUP, PLC

       By: <u>s/ Adam G. Taub</u>
         Adam G. Taub (P48703)
         Attorney for MICHAEL MALEY
         17200 West 10 Mile Rd. Suite 200
         Southfield, MI 48075
         Phone:  (248) 746-3790
         Email:  adamgtaub@clgplc.net

Dated:  October 17, 2018