**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MICHAEL MALEY,

      Plaintiff,

v.                                                                      Case No. 18-13245

SPECIALIZED LOAN SERVICING LLC
and E*TRADE BANK,

      Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS AND GRANTING LEAVE TO FILE
AN AMENDED COMPLAINT**

Michael Maley defaulted on the second mortgage on his home. He brings this

action against the owner of his mortgage and promissory note, E*Trade Bank ("ETB"),

and the collection agency employed by it, Specialized Loan Servicing LLC ("SLS").

(ECF No. 1.) Each Defendant filed a Motion to Dismiss. (ECF Nos. 10, 14.) Plaintiff filed

responses (ECF Nos. 17, 18), and Defendants jointly replied (ECF No. 19). Having

reviewed the briefing, the court determines that a hearing is unnecessary. *See* E.D.

Mich. LR 7.1(f)(2). For the reasons explained below, the court will grant in part and deny

in part the motions and Plaintiff will be given limited leave to replead.

## I. BACKGROUND

The following facts are taken from the general allegations section of Plaintiff's

complaint. (ECF No. 1.) In August 2014, Plaintiff took out a second mortgage on his

home for $100,000 with Quicken Loans, who sold the mortgage and note to ETB. Later

that year, Plaintiff fell behind on his monthly payments and ETB hired SLS to collect on

the mortgage. In February 2015, the parties modified in writing the terms of the mortgage so that the interest rate was 0% and the monthly payment was $1. The unpaid principal balance at that time was $103,620. Plaintiff received statements consistent with the terms of the modification for many months. Around April 18, 2016, he received the last such statement, which identified the unpaid principal balance as $103,479.58.

Plaintiff contacted Defendants to inquire why he had stopped receiving monthly statements, and in October 2016 the parties agreed to a structured settlement of the mortgage. Plaintiff understood its terms as requiring him to pay $200 per month at 0% interest. When he received his next statement around December 8, 2016, however, it indicated that his interest rate was 5.25% and there was a past due balance of $9,823.44. Around December 13, 2016, Plaintiff received a structured settlement letter from Defendants stating the unpaid balance on the mortgage was $112,974.87.

Around April 21, 2017, Plaintiff wrote to Defendants disputing the balance amount. He received a response around May 5, 2017 indicating that his account had accrued $9,525.29 in interest and administrative fees between March 2016 and December 2016. Plaintiff wrote again on May 16, 2017 requesting an explanation and documentation of the $9,525.29, including the monthly statements from May 2016 to November 2016 that he never received. Defendants responded around May 25, 2017 explaining that due to a system error they did not have the monthly statements he requested. The response further indicated that the balance to date was $103,449.58[1],

---

[1] Earlier in the complaint, in paragraph 25, Plaintiff alleges that this was the unpaid principal balance as of May 31, 2016 according to Defendants records. (*Id.*, PageID.5.)

and the previous billing statements Plaintiff received were not in error.

Plaintiff continued to ask Defendants about the accrual of approximately $10,000 between May 2016 and December 2016. He wrote to Defendants again around August 18, 2017 asking about it but did not receive a response. Around October 6, 2017, Plaintiff sent what he asserts was a qualified written request to Defendants disputing the charges on his account and seeking an explanation of their accrual. He received a response from Defendants around November 1, 2017, which he claims did not address his question. Plaintiff sent another alleged qualified written request around November 13, 2017 again asking for an explanation of what caused his loan to accrue almost $10,000 in charges between May 2016 and December 2016. He received a response around March 15, 2018, which "represented that 'pursuant to the settlement' the unpaid principle [sic] balance would have increased to $112,974.87" and "that Defendants capitalize the past due balance." (*Id.*, PageID.8.)

Plaintiff did not understand how this explanation fit with his monthly statements from Defendants through April 2016 indicating an interest rate of 0%. He sent a written request around April 28, 2018 asking for an explanation of when and why his interest rate changed from 0%. Defendants responded around May 18, 2018 stating that his interest rate was set to 0% in February 2015 but changed to a higher rate in December 2016, and the current interest rate was not in error. Plaintiff understood this to mean that Defendants "retroactively and illegally added interest to his mortgage." (*Id.*, PageID.9.) The response did not, in Plaintiff's estimation, explain how the new interest rate was calculated. Plaintiff alleges that had he known his interest rate was not 0% or that interest would be applied retroactively to his loan, he would have made larger

3

payments earlier and his current balance would be approximately $95,000 rather than $122,500.

On October 17, 2018, Plaintiff filed an eight-count complaint against Defendants. (ECF No. 1.) Four of the counts were against only SLS: (I) violation of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 et seq.; (III) fraud/ misrepresentation; (VII) violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq.; and (VIII) violation of the Michigan Occupational Code (MOC). The remaining claims were against both Defendants: (II) breach of contract; (IV) unjust enrichment; (V) misrepresentation; and (VI) violation of the Michigan Consumer Protection Act, M.C.L. § 445.903(1).

SLS filed a motion to dismiss Plaintiff's complaint in its entirety for failure to state a claim, asking that Counts I, III, IV, and V be dismissed with prejudice and the remaining claims be dismissed without prejudice. (ECF No. 10.) Subsequently, ETB filed a motion to dismiss that incorporated and relied upon SLS's motion and brief. (ECF No. 14.) Plaintiff filed a response, agreeing to the dismissal of Counts III, IV, V, and VI and contesting the dismissal the remaining counts (I, II, VII, and VIII). (ECF No. 17, PageID.87.) He seeks leave to file an amended complaint. (*Id.*, PageID.88–90.)

## II. STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010). A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P.

4

12(b)(6).

"To survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Smith v. Tipton Cty. Bd. of Educ.*, 916 F.3d 548, 551–52 (6th Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In determining whether to grant a Rule 12(b)(6) motion, the court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *United States v. Brookdale Senior Living Cmtys., Inc.*, 892 F.3d 822, 830 (6th Cir. 2018) (quoting *Twombly*, 550 U.S. at 570). The court does not, however, "accept as true . . . 'legal conclusions or unwarranted factual inferences.'" *Theile v. Michigan*, 891 F.3d 240, 243 (6th Cir. 2018) (quoting *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).

### III. DISCUSSION

Defendants move to dismiss the complaint in its entirety for failure to state a claim and Counts I, III, IV, and V with prejudice. Plaintiff agrees to the dismissal of

Counts III, IV, V, and VI; they are not at issue in this opinion and order. Remaining are claims alleging violations of RESPA, the FDCPA, and the MOC by SLS and breach of contract by both Defendants. The general basis upon which Defendants argue that the complaint should be dismissed is that it lacks details, "including dates of the alleged conduct, which Defendant engaged in the conduct alleged, which provisions of the purported loan modification agreement were allegedly violated, and which sections of statutes were allegedly violated." (ECF No. 10, PageID.45.) Plaintiff responds that the complaint contains both specific dates and descriptions of the parties' communications underlying his claims. (ECF No. 17, PageID.75.) The court will look at each Count in turn.

## A. Violation of RESPA (Count I)

In Count I, Plaintiff alleges SLS violated four provisions of § 2605(e) of RESPA. (ECF No. 1, PageID.11–12.) SLS argues that this claim fails as a matter of law because it is barred by the statute of limitations. (ECF No. 10, PageID.45.) The statute of limitations for bringing claims under § 2605 is three years "from the date of the occurrence of the violation." 12 U.S.C. § 2614. The parties dispute when the three-year period began running. SLS argues that it began on February 19, 2015, when the parties executed a loan modification agreement. (ECF No. 10, PageID.45.) Plaintiff counters that the period began when SLS failed to properly respond to his qualified written request ("QWR"), the first of which was sent October 6, 2017. (ECF No. 17, PageID.85.)

Section 2605(e) requires a loan servicer to provide a written response to a QWR within 30 days of its receipt. 12 U.S.C. § 2605(e)(2). A violation of this provision occurs when the loan servicer fails to respond to a QWR. *See, e.g., Sykes v. RBS Citizens,*

*N.A.*, 2 F. Supp. 3d 128, 142 (D.N.H. 2014); *Falcocchia v. Saxon Mortg., Inc.*, 709 F.

Supp. 2d 860, 868–69 (E.D. Cal. 2010) ("Because the conduct complained of is the

failure to respond to the alleged qualified written request, the claim accrued, and the

claim began to run, at the time of that failure.") (quoted approvingly by *Nino v. Flagstar

Bank, FSB*, No. 16-14407, 2018 WL 1556235, at *2 (E.D. Mich. Mar. 30, 2018)). The

cases SLS cites in support of the proposition that a RESPA claim accrues on the date

the loan documents are executed are inapposite because they do not deal with

violations under § 2605(e)(2), which are distinguishable from claims arising out of

wrongdoing at the time a loan was entered into. (ECF No. 10, PageID.46; ECF No. 19,

PageID.105–06) (citing *Brown v. Chase Bank, N.A.*, No. 12-11440, 2013 WL 1278523,

at *5 (E.D. Mich. Jan. 18, 2013); *Hood v. Chase Manhattan Mortg. Corp.*, No. 12-13855,

2013 WL 1629306, at *4 (E.D. Mich. Apr. 16, 2013)). In this case, SLS's alleged

inadequate responses to Plaintiff's QWRs occurred in late 2017. The complaint was

filed in October 2018, well within the three-year period. Accordingly, Plaintiff's RESPA

claim is not barred by the statute of limitations.

    SLS next argues that Count I fails to state a claim because it lacks necessary

factual allegations. Specifically, SLS contends that the complaint lacks allegations that

SLS was a mortgage servicer under RESPA, that § 2605(e)(2) applies to SLS, that the

QWRs complied with the statutory requirements, and that SLS's responses did not

comply with them (nor are the relevant QWRs and responses attached to the

complaint). (ECF No. 10, PageID.46.) Under the complaint as currently alleged, the

court agrees. While the complaint identifies the dates and subject matter of the alleged

QWRs and responses in its general allegations, it fails to make other necessary

showings to state a plausible claim for a violation of § 2605(e).

Plaintiff must make four showings to state a RESPA claim for failure to respond to a QWR: "(1) the defendant is a loan servicer, (2) the plaintiff sent the defendant a valid QWR, (3) the defendant failed to adequately respond within the statutory period, and (4) the plaintiff is entitled to actual or statutory damages." *Tonea v. Bank of Am.*, N.A., 6 F. Supp. 3d 1331, 1346 (N.D. Ga. 2014) (citations omitted). The complaint in this case assumes but does not allege that SLS is a loan servicer under RESPA. Likewise, the complaint asserts that the written disputes Plaintiff sent on various dates were qualified written requests as defined by RESPA but does not allege that the communications complied with the requirements of § 2605(e)(1)(B). Because these allegations are insufficient to state a plausible claim for a RESPA violation, Count I will be dismissed.

### B. Breach of Contract (Count II)

Count II alleges breach of contract against both Defendants. It states that the parties agreed Plaintiff would pay the amounts set forth in the invoices sent to him, and "Defendants breached that agreement by retroactively adding charges and interest to the Plaintiff's loan account." (ECF No. 1, PageID.12.) Defendants argue that this claim is deficient because it does not identify the agreement at issue, specify the provisions allegedly breached, or allege any facts regarding causation or damages. (ECF No. 10, PageID.47.)

To prove a breach of contract claim under Michigan law, one must establish that: "(1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Constr., Inc.*, 848

8

N.W.2d 95, 104 (Mich. 2014). Here, Plaintiff alleges that he had a loan modification agreement with Defendants, that Defendants breached the agreement by unilaterally raising the interest rate and adding charges to his account, and that this caused him a financial loss because he would have made higher monthly payments at his 0% interest rate. While inartfully drafted, the complaint, construed in the light most favorable to Plaintiff, does appear to state a plausible claim for breach of contract.

Defendants argue that because Plaintiff did not attach the alleged contract "his assertions are one-sided and cannot be substantiated." (ECF No. 10, PageID.47.) On a motion to dismiss, however, the court takes the opposing party's factual allegations as true and "[a] well-pleaded complaint need not include detailed factual matter or supporting evidence." *Acosta v. Min & Kim, Inc.*, 919 F.3d 361, 367 (6th Cir. 2019) (citing *Twombly*, 550 U.S. at 555). Because the complaint provides factual allegations sufficient to support its breach of contract claim, Count II will not be dismissed.

### C. Violations of the FDCPA (Count VII) and the MOC (Count VIII)

Counts VII and VIII of the complaint assert that SLS violated the FDCPA and the MOC. (ECF No. 1, PageID.15–16.) SLS argues that these counts "consist solely of conclusory allegations and fail to contain any factual support to withstand a motion to dismiss," and points out that the complaint does not identify which specific provisions of the statutes it is alleged to have violated. (ECF No. 10, PageID.50.) Plaintiff contends that paragraphs 30–33 and 43 of the complaint allege facts that state claims under the FDCPA and the MOC. (ECF No. 17, PageID.87.) These paragraphs accuse SLS of sending Plaintiff a settlement letter that falsely stated his balance on the mortgage and did not represent the settlement terms he agreed to. (ECF No. 1, PageID.5–6, 8–9.)

"To state a claim under the FDCPA, a plaintiff must show that a defendant violated one of the substantive provisions of the FDCPA while engaging in debt collection activity." *Clark v. Lender Processing Servs.*, 562 Fed. Appx. 460, 465–66 (6th Cir. 2014) (internal citation omitted). In this case, neither the complaint nor Plaintiff's response to the present motion identify any specific provisions of the multifaceted FDCPA that were allegedly violated by SLS. Rather, the complaint makes a blanket allegation that SLS's actions violated the FDCPA. (ECF No. 1, PageID.15.) While it is possible that Plaintiff has a valid claim under the FDCPA, there is not a plausible claim stated in the complaint as currently alleged. Count VII will be dismissed.

Count VIII, alleging violations of the MOC, is similarly bare. It does not specify what part of the Michigan Occupational Code SLS allegedly violated. Nor does it identify any facts from which the court could reasonably infer liability on the part of SLS under the MOC. Even viewed in the light most favorable to Plaintiff, the minimal factual allegations regarding SLS's conduct and conclusory statements that SLS violated the MOC do not reach the threshold of plausibility. As a result, Count VIII will be dismissed.

### D. Leave to Amend

Because Counts I, VII, and VIII presently lack the specificity and factual allegations required "to 'state a claim to relief that is plausible on its face,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570), they will be dismissed without prejudice. Plaintiff, in his response brief, seeks leave to amend his complaint in order to flesh out these claims to the extent the court finds them insufficiently pleaded. (ECF No. 17, PageID.88–90.) While, as Defendants point out, Plaintiff has not followed the proper amendment procedure, that "is not grounds for denial of the motion." E.D. Mich. L.R.

15.1. Indeed, because these claims are being dismissed without prejudice, Plaintiff is free to bring them in another suit. The new case, if brought, would then be consolidated with the present case. In the interest of avoiding unnecessary expense and delay, the court will grant Plaintiff leave to replead Counts I, VII, and VIII to comply with the pleading standard of Rule 8, as interpreted by *Twombly* and *Iqbal*.[2]

## IV. CONCLUSION

IT IS ORDERED that Defendant Specialized Loan Servicing LLC's Motion to Dismiss (ECF No. 10) and Defendant E*Trade Bank's Motion to Dismiss (ECF No. 14) are GRANTED IN PART AND DENIED IN PART. Counts I, VII, and VIII are DISMISSED WITHOUT PREJUDICE. Counts III, IV, V, and VI are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that to the extent Plaintiff seeks to replead the claims in Counts I, VII, and VIII to comply with the pleading standards, he may file an amended complaint by **Wednesday, May 8, 2019**. Defendants may file a responsive pleading by **Wednesday, May 22, 2019**.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  April 24, 2019

---

[2] Leave is preemptively granted as to only these three counts. To the extent Plaintiff attempts to amend his complaint in any other manner, he must comply with the requirements of Federal Rule of Civil Procedure 15 and Local Rule 15.

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 24, 2019, by electronic and/or ordinary mail.

s/Lisa Wagner
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\18-13245.MALEY.GrantinPartDenyinPart12b6MotiontoDismiss.docx