**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

MICHAEL MALEY,

      Plaintiff,

v.                                                                  Case No. 18-13245

SPECIALIZED LOAN SERVICING LLC
and E*TRADE BANK,

      Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiff Michael Maley brings this action asserting claims under the Real Estate

Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, breach of contract, the Fair

Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e and 1692f, and the

Michigan Occupational Code ("MOC"), Mich. Comp. Laws § 339.915. He alleges

Defendants Specialized Loan Servicing LLC ("SLS") and E*Trade Bank attempted to bill

him for debt amounts he did not owe.

The parties completed discovery, and Defendants moved for summary judgment.

(ECF No. 50.) The matter has been thoroughly briefed. (ECF Nos. 53, 55.) After

reviewing the record, the court finds a hearing to be unnecessary. E.D. Mich. LR

7.1(f)(2). For the reasons provided below, the court will grant Defendants' motion.

## I.  BACKGROUND

The following facts are taken from the record established by both parties. Those noted as established are either agreed upon or lack contradictory evidence. Others may be noted as assumed true in the light most favorable to the non-moving party.

On August 5, 2004, Plaintiff entered into a mortgage loan agreement with Quicken Loans for $100,000. (ECF No. 53, PageID.482.) Quicken Loans sold its rights to the loan to Defendant E*Trade Bank, and in February 2015 Defendant SLS became the servicer of the loan. (*Id.*) At the time SLS became the servicer, Plaintiff was in default; he had failed to make his monthly payments, which amounted to approximately $400. (*Id.*) The loan used a variable interest rate that fluctuated based on a market index. (*Id.*, PageID.485; *see also* ECF No. 51, PageID.418, Promissory Note.)

Defendants assert that due to an administrative error Defendant SLS did not receive complete information regarding Plaintiff's account. (ECF No. 50, PageID.368.) Defendant SLS sent Plaintiff monthly statements listing the principal as $103,449.58, the interest rate as 0%, and the monthly payments as $1. (ECF No. 53, PageID.483-84; ECF No. 54, PageID.564, PageID.564-78.) Between May 2016 and November 2016, due to a systems error, Defendant SLS did not send Plaintiff monthly statements at all. (ECF No. 53, PageID.484-85; ECF No. 51, PageID.426.) In December 2016, Defendant SLS corrected its systems error and sent Plaintiff a billing statement reflecting the accurate variable interest rate of 5.25%, the monthly payment amount of $446.52, and the payments Plaintiff missed since February 2015. (ECF No. 53, PageID.485; ECF No. 54, PageID.580; ECF No. 51, PageID.426, 428.)

2

On the billing statements Defendant SLS sent to Plaintiff, Defendant SLS provided information on how Plaintiff could contact Defendant SLS. The statements specifically identified an address in Littleton, Colorado for "Notices of Error and Requests for Information (Including Qualified Written Requests)." (ECF No. 51, PageID.445; ECF No. 53, PageID.486.) Later in the statement, under the title "Error Resolution and Requests for Information," Defendant SLS reiterated that "Notices of Error and Requests for Information must be sent to" the address in Littleton. (ECF No. 51, PageID.445; ECF No. 53, PageID.486.)

In December 2016, Defendant SLS offered an amendment to the terms of the loan contract. The offer, titled the "Structured Settlement Proposal," would have reduced Plaintiff's monthly payments to $200 with a 0% interest rate and increased the principal balance to $112,974.87. (ECF No. 53, PageID.486.) The parties failed to agree to the proposal and Defendant SLS did not reclassify the principal amount as $112,974.87. (*Id.*, PageID.486-87; ECF No. 54, PageID.580-85.)

Beginning in April 2017, Plaintiff began contacting Defendant SLS about the loan, his payment schedule, the Structured Settlement Proposal, and Defendants' communications with government regulators. (ECF No. 53, PageID.487-88.) Defendant SLS provided responses to these inquiries, detailing the principal amount, the monthly payment Plaintiff owed, the rejection of the Structured Settlement Proposal, Plaintiff's payment history, and his failure to make adequate payments since early 2015. (*Id.*, PageID.489-92.)

Plaintiff filed his compliant on October 17, 2018. (ECF No. 1.) Discovery began in July 2019 and concluded in December 2019. (ECF No. 27.) Defendants moved for summary judgment on March 15, 2021. (ECF No. 50.)

## II.  STANDARD

To prevail on a motion for summary judgment, a movant must show—point out—that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). First, the moving party bears the initial burden of presentation that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no requirement, however, that the moving party "support its motion with [evidence] negating the opponent's claim." *Id.* (emphasis removed); *see also Emp'rs Ins. of Wausau v. Petrol. Specialties, Inc.*, 69 F.3d 98, 102 (6th Cir. 1995).

Second, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis removed) (quoting Fed. R. Civ. P. 56(e)). This requires more than a "mere existence of a scintilla of evidence" or "'[t]he mere possibility of a factual dispute." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). For a court to deny summary judgment, "the evidence [must be] such that a reasonable [finder of fact] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. All reasonable inferences from the underlying facts must be drawn "in the light most favorable to the party

opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015).

## III. DISCUSSION

Defendants move for summary judgment on all four of Plaintiff's claims. The court will address each count in turn.

## A.  RESPA

RESPA places responsibilities on loan servicers to respond to certain "qualified written requests" ("QWR") made by debtors that seek information or dispute charges. 12 U.S.C. § 2605(e). Under RESPA, "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period." *Id.* "Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt" of a QWR, a loan servicer must provide the debtor notice of a correction in the loan account, an explanation why the servicer believes the account is accurate, or the information sought by the debtor in his QWR.

Plaintiff asserts that Defendant SLS violated RESPA by failing to timely respond to communications Plaintiff sent to Defendant SLS. (ECF No. 53, PageID.498-501.) He claims that the communications qualify as QWRs. (*Id.*) However, it is undisputed that all the letters and communications Plaintiff relies on for his RESPA claim were either faxed or mailed to an unidentified address. (ECF No. 53, PageID.488-89.) None of the messages were sent to the address Plaintiff specifically designated to receive QWRs.

5

(*Id.*) The parties accept that the billing statements, which Defendant SLS sent Plaintiff over the course of many years, stated under the title "How to Contact Us" that any "Notices of Error or Requests for Information (Including Qualified Written Requests)" Plaintiff had must be sent to an address in Littleton, Colorado. (ECF No. 51, PageID.445; ECF No. 53, PageID.486.) In a provision titled "Error Resolution and Requests for Information" Defendant SLS reiterated that "Notices of Error and Requests for Information," as previously identified in the statement, "must be sent to" the address in Littleton. (ECF No. 51, PageID.445; ECF No. 53, PageID.486.)

It is well established that, when a loan servicer provides an address at which the servicer receives QWRs, debtors must submit their requests to that address in order to trigger RESPA response obligations. RESPA regulations explicitly state that "[a] servicer may, by written notice provided to a borrower, establish an address that a borrower must use to request information in accordance with the procedures in this section." 12 C.F.R. § 1024.36(b). The Sixth Circuit has repeatedly held that if a debtor fails to send requests to a designated QWR address, the servicer has "no duty to respond." *Dale v. Selene Financing LP*, Case No. 16-4296, 2018 WL 2222598, at *1 (6th Cir. Mar. 16, 2018) (citing *Bivens v. Bank of Am.*, 868 F.3d 915, 919 (7th Cir. 2017)) (holding that summary judgment in favor of a servicer was warranted where the servicer "notified [the debtor] by mail of the address to send [QWRs]" and "[the debtor] sent his requests to a different address"); *Best v. Ocwen Loan Servicing, LLC*, Case No. 16-1217, 2016 WL 10592245, at *2 (6th Cir. Nov. 29, 2016) (citing *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141 (10th Cir. 2013); *Roth v. CitiMortgage, Inc.*, 756 F.3d 178 (2d Cir. 2014)) (holding, despite the fact that the debtor "inadvertently typed the

wrong address on the mailing label" and the servicer received actual notice of the debtor's QWR, that "[a] servicer is not obligated to respond to QWRs sent to an address other than the designated QWR address").

In fact, the Sixth Circuit reviewed a RESPA claim very similar to Plaintiff's in *Lawson v. Specialized Loan Servicing, LLC*, Case No. 18-5250, 2018 WL 7575708 (6th Cir. Sep. 14, 2018). In *Lawson*, the plaintiffs alleged that they sent Defendant SLS two letters requesting information on a mortgage loan. *Id.* at *1. The plaintiffs also alleged that they called Defendant SLS directly about the loan. *Id.* According to the plaintiffs, Defendant SLS failed to respond to the plaintiff's repeated inquires in accordance with RESPA. *Id.* The Sixth Circuit noted that Defendant SLS informed the plaintiffs, after they sent SLS two letters, that they must submit written requests, including QWRs, to SLS's Littleton address. *Id.* at *4. The court reiterated that "a servicer may designate an exclusive address for the receipt of QWRs" and affirmed dismissal of the claim. *Id.*

Here, like the plaintiffs in *Lawson*, it is uncontested that Defendant SLS specifically identified in its billing statements that Plaintiff must transmit "Notices of Error or Requests for Information (Including Qualified Written Requests)" to the Littleton address. (ECF No. 51, PageID.445; ECF No. 53, PageID.486.) Defendant SLS informed Plaintiff that such requests "must be sent to" that address. (ECF No. 51, PageID.445; ECF No. 53, PageID.486.) Unlike the plaintiffs in *Lawson*, Plaintiff here does not contend that the QWR address designation was made after Plaintiff attempted to send QWRs to Defendant SLS. Furthermore, unlike the plaintiff in *Best v. Ocwen Loan Servicing*, Plaintiff did not fail to send a QWR to the right address due merely to a typographical error. 2016 WL 10592245, at *2 (affirming dismissal of the RESPA claim).

The uncontested facts show that Defendant SLS repeatedly notified Plaintiff of the address to which he needed to transmit QWRs. (ECF No. 51, PageID.445; ECF No. 53, PageID.486, 488-89.) Plaintiff failed to send a QWR to the address. (ECF No. 51, PageID.445; ECF No. 53, PageID.486, 488-89.) Thus, Defendant SLS's RESPA obligations were never triggered, and, as a matter of law, summary judgment is warranted on the RESPA claim. *See* 12 C.F.R. § 1024.36(b); *Lawson*, 2018 WL 7575708, at *4; *Dale*, 2018 WL 2222598, at *1; *Best*, 2016 WL 10592245, at *2; Fed. R. Civ. P. 56(a).

Plaintiff contends that Defendant SLS violated RESPA because, when SLS communicated with him regarding his loan balance and account information, they provided a telephone number to contact. (ECF No. 53, PageID.500.) He also asserts that Defendant SLS never used the word "exclusive" in their notices identifying the Littleton address as the designated QWR address. (*Id.*, PageID.500-01.)

First, Defendants accurately note that, in response to Plaintiff's inquiries, Defendant SLS informed him on at least one occasion that his communications did not qualify as QWRs because he failed to mail the requests to the Littleton address. (ECF No. 51, PageID.432; ECF No. 55, PageID.648-49.) Furthermore, the Sixth Circuit has repeatedly held that, under RESPA, a debtor must send QWRs to the servicer's designated address, even when the debtor communicates with the loan servicer in some other manner and even when the servicer has actual notice of the debtor's requests. *See Lawson*, 2018 WL 7575708, at *4; *Best*, 2016 WL 10592245, at *2; *see also Best v. Ocwen Loan Servicing*, Case No. 15-13007, 2016 WL 125875, at *3 (E.D. Mich. Jan. 12, 2016) (Ludington, J.) ("[A servicer] did not subject itself to a RESPA duty

8

when it actually received and responded to [a debtor's] correspondence."). In addition,

neither the RESPA statutory language nor its regulations prevent loan servicers from

both providing debtors a contact telephone number and establishing an exclusive QWR

address. *See* 12 U.S.C. § 2605(e); 12 C.F.R. § 1024.36(b). The decision not to expand

RESPA liability for providing a telephone number is abundantly rational. Exposing

servicers to greater legal scrutiny simply for providing a separate telephone contact

number, in addition to a designated QWR address, would disincentivize the provision of

contact information to debtors, reducing customer service in loan markets and

negatively impacting consumer welfare. Finally, RESPA's statutory language and

regulations include no provision requiring servicers to use the word "exclusive" when

identifying their designated QWR address. *See* 12 U.S.C. § 2605(e); 12 C.F.R. §

1024.36(b). Plaintiff fails to cite a single case holding that the word "exclusive" is

necessary to establish a designated QWR address. Thus, Defendants' motion on the

RESPA claim will be granted.

### B.  Breach of Contract

Plaintiff's breach of contract claim is not well articulated. In the complaint, Plaintiff

asserts that the parties "had an agreement evidenced in writing whereby the Plaintiff

would pay the amounts set forth in the invoices sent to the Plaintiff." (ECF No. 21,

PageID.135.) Between February 2015 and April 2016, the parties accept that Defendant

SLS mailed Plaintiff monthly statements identifying an interest rate of 0% and a monthly

payment of $1. (ECF No. 53, PageID.483-84; ECF No. 54, PageID.564, PageID.564-

78.) However, Defendants cite their loan and mortgage contracts with Plaintiff and

assert that "no agreement between Plaintiff and [Defendants] . . . contains a provision

stating Plaintiff shall pay only the amounts set forth in the invoices sent to Plaintiff."
(ECF No. 50, PageID.383-84.) The loan agreement explicitly states that a variable
interest rate, determined by a market index, will govern the parties' contract, (ECF No.
53, PageID.485; ECF No. 51, PageID.418), and the parties do not dispute that
Defendant SLS's December 2016 billing statement reflected an accurate variable
interest rate of 5.25%, not 0%. (ECF No. 53, PageID.485; ECF No. 54, PageID.580;
ECF No. 51, PageID.426, 428.)

In response to this evidence and Defendants' arguments for summary judgment,
Plaintiff fails to provide any substantive argument. He does not dispute the factual
assertions made by Defendants, and he provides no evidentiary citation in support of
his position. Specifically, he does not dispute that the parties' loan and mortgage
agreement included no terms setting the interest rate and monthly payments based on
monthly statements or invoices. Instead of addressing Defendants' arguments, Plaintiff
asserts merely that "[t]he First Amended Complaint states that SLS modified the
Plaintiff's loan in writing in invoices which set forth the material terms of the agreement."
(ECF No. 53, PageID.507.) However, at the summary judgment stage, Plaintiff must "go
beyond the pleadings and by her own affidavits, or by the depositions, answers to
interrogatories, and admissions on file, designate specific facts showing that there is a
genuine issue for trial." *Smith v. Freland*, 954 F.2d 343, 345 (6th Cir. 1992) (quoting
*Celotex Corp.*, 447 U.S. at 324)); *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 ("[T]he
nonmoving party must come forward with specific facts showing that there is a genuine
issue for trial."). Plaintiff cannot simply cite conclusory allegations in the complaint,
without evidentiary support, and establish an issue of fact for trial. In addition, he cannot

make general and vague statements without substantive explanation, analysis, or citations. *See McPherson v. Kelsey*, 125 F.3d 989, 996 (6th Cir. 1997) (quotation removed) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.").

To prove a valid contract modification under Michigan law, Plaintiff must show that the alteration was made "by mutual consent." *Kloian v. Domino's Pizza LLC*, 733 N.W.2d 766, 771 (Mich. Ct. App. 2006). "The mutuality requirement is satisfied where a modification is established through clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to waive the terms of the original contract." *Id.* (quoting *Quality Prods. and Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 666 N.W. 2d 251, 258 (2003)). "[T]he principle of freedom to contract does not permit a party unilaterally to alter [a] contract." *Quality Prods. and Concepts Co.*, 666 N.W. 2d at 253. Plaintiff does not cite any caselaw on modification in support of his argument. In the response, Plaintiff fails to identify and explain evidence to show that Defendants, or Plaintiff, consented to fundamentally changing the loan agreement to establish certain monthly statements as the contractually binding interest rate and monthly payments. He has not provided substantive arguments in favor of his position, let alone enough to allow a jury to find by "clear and convincing evidence" that Defendants agreed to modify the loan and mortgage contracts. *Kloian*, 733 N.W.2d at 771; *Anderson*, 477 U.S. at 248. Summary judgment is warranted on the contract modification claim. Fed. R. Civ. P. 56(a).

Plaintiff's second argument is that Defendant SLS failed to send him monthly billing statements from May to November 2016. (ECF No. 53, PageID.507.) According

11

to Plaintiff, "[t]he loan agreement between the parties states that the Defendants shall provide the Plaintiff with a monthly statement for any month where more than $1.00 is due." (*Id.*) Yet Plaintiff's breach of contract claim, as stated in his complaint, is based on the (conclusory) assertion that Defendants modified the loan agreement by sending monthly statements. (ECF No. 21, PageID.135.) Nowhere in the allegations underlying Plaintiff's breach of contract claim does he state that Defendants breached the loan and mortgage contracts by failing to send monthly statements. (*See id.*)

Plaintiff is arguing in favor of a new breach of contract claim at the summary judgment stage. However, it is well established that a party "cannot assert new claims in response to summary judgment." *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 817 (6th Cir. 2020); *accord Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) ("To the extent [the plaintiff] seeks to expand its claims to assert new theories, it may not do so in response to summary judgment."). Nothing in Plaintiff's complaint put Defendants on notice that Plaintiff intended to bring a breach of contract claim due to Defendant SLS's failure to mail monthly statements between May and November 2016. Two and a half years have passed since the complaint was filed, and over a year has passed since discovery closed. (ECF Nos. 1, 27.) The court will not consider a new claim made in passing in a summary judgment response. *Tchankpa*, 951 F.3d at 817. (*See* ECF No. 21.)

Plaintiff asserts in conjunction with this novel claim that Defendants "unilaterally raised Plaintiff's interest rate to 5.25% and stated that he owed a past due balance of

$9,823.44."[1] (ECF No. 53, PageID.507.) But as described above, the parties do not dispute that the December 2016 billing statement reflected an accurate variable interest rate of 5.25%, (ECF No. 53, PageID.485; ECF No. 54, PageID.580; ECF No. 51, PageID.426, 428), and Plaintiff has advanced no evidence or argument that Defendants mutually consented to modify the contract simply by sending Plaintiff the February 2015 to April 2016 monthly statements. The court will grant Defendants' motion as to Plaintiff's breach of contract claim.

### C.  FDCPA and MOC

### 1.  Statute of Limitations for the FDCPA Claim

Defendants first argue that Plaintiff's FDCPA claim is barred by the statute of limitations. Under 15 U.S.C. § 1692k(d), an FDCPA plaintiff must bring his claim "within one year from the date on which the violation occurs." "The FDCPA limitations period begins to run on the date the alleged FDCPA violation actually happened." *Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019). Plaintiff filed his complaint on October 17, 2018. (ECF No. 1.) Thus, Plaintiff can bring an FDCPA claim only if the alleged violation supporting the claim occurred after October 16, 2017.

Defendants point to allegations in the complaint on which Plaintiff bases his FDCPA claim. (ECF No. 50, PageID.385.) After Defendant SLS stopped sending billing statements from May to November 2016, Plaintiff alleged that SLS sent a statement in

---

[1]    Plaintiff also asserted in the complaint that Defendants unilaterally raised the principal to $112,974.87 pursuant to the Structured Settlement Proposal. (ECF No. 21, PageID.127.) However, in briefing, Plaintiff does not contest that the parties failed to agree to the proposal and Defendant SLS never increased the principal amount to $112,974.87. (ECF No. 53, PageID.486-87; ECF No. 54, PageID.580-85.) Plaintiff did not advance its Structured Settlement Proposal argument in briefing.

December 2016 identifying the interest rate at 5.25% and past due payments amounting to $9,823.44. (ECF No. 21, PageID.126.) According to the complaint, Defendant SLS also sent Plaintiff a letter in December 2016 that "stat[ed] falsely that the unpaid principal balance on the mortgage was $112,974.87." (*Id.*, PageID.127.) Plaintiff alleged explicitly that these amounts Defendants attempted to collect were "not authorized by contract" and were "not permitted by law." (*Id.*, PageID.127.)

Plaintiff now accepts that the parties never agreed to the Structured Settlement Proposal, and uncontested evidence shows that Defendants never attempted to collect payments for an enhanced $112,974.87 principal amount. (ECF No. 53, PageID.486-87; ECF No. 54, PageID.580-85.)

However, Plaintiff still claims that Defendants violated the FDCPA for sending a billing statement with a 5.25% interest rate and $9,823.44 past amount due. First, Plaintiff states that "[t]he offensive communication" underlying his FDCPA claim "is comprised of the erroneous account statements issued from February 2015 to April 2016." (ECF No. 53, PageID.508.) This is an unconvincing statement given that Plaintiff repeatedly asserts, in the complaint and in briefing, that the February 2015 to April 2016 statements accurately reflect the terms of the parties' agreement. (ECF No. 12, PageID.21, Amended Complaint ("On or about February 19, 2015, Defendants modified the terms of the mortgage."); ECF No. 53, PageID.509, Plaintiff's Response ("Defendants modified the terms" of the parties' agreement by setting an interest rate of 0% and a monthly payment of $1.).) Nonetheless, those statements would fall outside the bounds of the FDCPA's statute of limitations, which reaches back only a year to October 17, 2017. 15 U.S.C. § 1692k(d).

14

Second, Plaintiff asserts that "Defendants continued to issue false and misleading monthly account statements from December 2016 to February 2020." (ECF No. 53, PageID.508.) He also argues that "Defendants sent the Plaintiff a false and misleading Notice of Default and Intent to Foreclose on December 19, 2019." (*Id.*) However, neither monthly statements issued after December 2016 nor a December 2019 Notice of Default and Intent to Foreclosure are mentioned or cited in the complaint. (*See* ECF No. 21.) The only billing statement referred to in Plaintiff's complaint as being sent without "authoriz[ation]" in contract and law is the December 2016 billing statement. (*Id.*, PageID.126-27.) It is that statement in which Defendants allegedly attempted to "unilaterally rais[e] [Plaintiff's] interest rate to 5.25%" and Defendants asserted that Plaintiff "owed a past due balance of $9,823.44." (*Id.*, PageID.126.)

"A party is not entitled to wait until the discovery cutoff date has passed and a motion for summary judgment has been filed on the basis of claims asserted in the original complaint before introducing entirely different legal theories." *Yanovich v. Zimmer Austin, Inc.*, 255 F. App'x 957, 970 (6th Cir. 2007) (quoting *Priddy v. Edelman*, 883 F.2d 438, 446 (6th Cir. 1989)); *Bridgeport Music, Inc.*, 508 F.3d at 400 ("To the extent [the plaintiff] seeks to expand its claims to assert new theories, it may not do so in response to summary judgment."). Plaintiff fails to provide any explanation for how separate billing statements made after December 2016 or the December 2019 Notice of Default relate to the FDCPA claim as alleged in the complaint, upon which Defendants relied to build their defenses, engage in discovery, and draft a motion for summary judgment.

Plaintiff mentions in passing that the "offensive account statements" occurred after the December 2016 statements and, thus, those statements constitute "continuing violations well within the one year statute of limitations." (ECF No. 53, PageID.508.) The argument implicitly assumes that the statements and communications Defendants sent after December 2016 contained the same alleged misrepresentations as those first made in the December 2016 statement. That assumption conforms to the complaint's primary focus on the December 2016 statement as the basis for Plaintiff's FDCPA claim.

In support of his "continuing violations" theory, Plaintiff fails to cite a single case. The Sixth Circuit has repeatedly rejected attempts to extend FDCPA statute of limitations through claims of continuing violations, reasoning that an FDCPA violation is a discrete event and the statute of limitations must begin when the initial violation occurs. *See Jodway v. Orlans, P.C.*, 759 F. App'x 374, 379-80 (6th Cir. 2018) (finding that a continuing-violation claim did not apply to an FDCPA suit where the plaintiff alleged the defendants "continuously misrepresented the validity of the mortgage"); *Smith v. Lerner, Sampson & Rothfuss,* 658 F. App'x 268, 273 (6th Cir. 2016) (rejecting the application of a continuing-violation theory where a bank made repeated alleged misrepresentations on a mortgage interest, reasoning that the bank's actions gave "continuing effect to [its] initial assertion"); *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 257-59 (6th Cir. 2014) (refusing to apply the continuing-violation doctrine, stating that applying it "to FDCPA claims would be inconsistent with the principles underlying the Supreme Court's limited endorsement of that doctrine"). The parties do not dispute that Defendants sent Plaintiff the December 2016 monthly statement well

outside the one-year limitations period for FDCPA claims. 15 U.S.C. § 1692k(d). The

December 2016 statement was the initial statement that Plaintiff asserts contained a

unilateral increase in interest rate and monthly payments, and Plaintiff identified the

December 2016 statement in his complaint as the billing statement supporting his

FDCPA claim. (ECF No. 21, 126-27; ECF No. 53, PageID.508.) As a matter of law, the

FDCPA claim is time barred. Fed. R. Civ. P. 56(a).

## 2.  Merits of the FDCPA and MOC Claims

Even if Plaintiff's FDCPA claim were not barred by the statute of limitations,

summary judgment would be warranted on the merits. The parties do not distinguish

between the MOC and FDCPA claims, and the court, like the parties, will analyze the

claims together. (ECF No. 50, PageID.387, Defendants' Motion for Summary Judgment

("[Mich. Comp. Laws §] 339.915 mirrors FDCPA Section 1692(e)(10)."); ECF No. 53,

PageID.508-09, Plaintiff's Response ("Similar to the FDCPA, the MOC prohibits a

company such as the Defendants from making misleading statements to a debtor.").)

In the complaint, Plaintiff alleges Defendants violated 15 U.S.C. § 1692e(1) and

(10) and 15 U.S.C. § 1692f(1). (ECF No. 21, PageID.136.) Section 1692(e)(1) states

that a debt collector cannot make a "false representation or implication that the debt

collector is vouched for, bonded by, or affiliated with the United States or any State,

including the use of any badge, uniform, or facsimile thereof." Defendants accurately

point out that no evidence in the record supports a finding that Defendants attempted to

affiliate their debt collection with the federal or state governments. (ECF No. 50,

PageID.386.) In the response, Plaintiff does not present evidence in support of the claim

and does not attempt to defend it. Summary judgment on the § 1692(e)(1) claim is warranted. Fed. R. Civ. P. 56(a).

Section 1692e(10) prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," and § 1692f(1) bars "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Plaintiff restated the language of these provisions in the complaint when he alleged Defendants in December 2016 "unilaterally rais[ed] his interest rate to 5.25% and stat[ed] that he owed a past due balance of $9,823.44" and "stat[ed] falsely that the unpaid principal balance on the mortgage was $112,974.87." (ECF No. 21, PageID.126-27.) The complaint stated that, in taking these actions, Defendants attempted to charge Plaintiff amounts that were "not authorized by contract" and were "not permitted by law." (*Id.*, PageID.127.) Plaintiff reiterates this legal theory in his briefing. In the response, he asserts that Defendants "modified the terms of the mortgage" by sending monthly statements indicating a 0% interest rate and that Defendants, in December 2016, "unilaterally rais[ed] his interest rate to 5.25% and stating that he owed a past due balance of $9,823.44." (ECF No. 53, PageID.509.) As described above, Plaintiff no longer argues that Defendants falsely raised the loan principal to $112,974.87 pursuant to the Structured Settlement Proposal. (*See* ECF No. 53; ECF No. 54, PageID.580-85.)

However, as the court found in its previous analysis, summary judgment is justified on the breach of contract claim. Plaintiff has failed to explain how Defendants provided consent to modify the loan and mortgage agreement to make interest rates

and monthly payments listed on monthly statements binding contract terms. *See supra* Section III.B. Such an amendment would override the previously agreed-upon variable interest rate. (ECF No. 53, PageID.485; ECF No. 51, PageID.418.) In his argument in favor of modification, Plaintiff merely cited back to allegations contained in the complaint and advanced a new breach of contract theory not included in the complaint. *See supra* Section III.B. (*See* ECF No. 53, PageID.507.) The parties do not dispute that the accurate variable interest rate for December 2016 was 5.25%, as Defendant SLS stated in its December 2016 billing statement. (ECF No. 53, PageID.485; ECF No. 54, PageID.580; ECF No. 51, PageID.426, 428.) Other than making the conclusory assertion that the parties' contracts were "modified," Plaintiff cites to no evidence supporting the position that the interest rate, monthly payment, and past amounts due listed in the December 2016 statement, and the billing statements issued thereafter, were false, incorrect, not authorized by contract, or not authorized by law. *See* 15 U.S.C. §§ 1692e(10), 1692f(1). (ECF No. 53, PageID.509.) Plaintiff provides neither substantive argument nor evidentiary citation to identify a genuine issue of fact that Defendants attempted to collect the wrong payment amount in December 2016, as Plaintiff claims. Fed. R. Civ. P. 56(a). Summary judgment is justified on both Plaintiff's FDCPA and MOC claims.

### IV. CONCLUSION

Based on the record as established by the parties, there is no genuine dispute of fact that Plaintiff did not send his disputes and requests for information to Defendant SLS's designated QWR address. Plaintiff has neither cited evidence nor provided substantive argument in support of the position that Defendants' monthly statements

modified basic terms of the parties' loan and mortgage agreements. Finally, Plaintiff's

FDCPA claim is time barred, and he has not presented a genuine question of fact that

the December 2016 billing statement falsely or in violation of law or contract raised

Plaintiff's interest rate, monthly payments, or past amount due. Accordingly,

   IT IS ORDERED that Defendants' Motion for Summary Judgment (ECF No. 50)

is GRANTED.

           s/Robert H. Cleland     /
           ROBERT H. CLELAND
           UNITED STATES DISTRICT JUDGE

Dated:  May 6, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, May 6, 2021, by electronic and/or ordinary mail.

           s/Lisa Wagner      /
           Case Manager and Deputy Clerk
           (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\18-13245.MALEY.MotionforSummaryJudgment.RMK.RHC.2.docx